Peter Strojnik, 6464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation )<br><br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>BottomLineStocks, a fictitious entity; )<br>GLOBAL ENTERTAINMENT )<br>ACQUISITION CORP, an Florida )<br>Corporation; UNKNOWN )<br>DEFENDANTS 1-50 )<br>Defendants. ) | NO.<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND FOR DAMAGES ARISING OUT OF TRANSMISSION OF UNSOLICITED FAXES - 47 U.S.C. § 227**<br><br>**REQUEST FOR TRIAL BY JURY** |

Plaintiff, on Plaintiff's behalf and on behalf of the Class persons and entities defined below, alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1) Plaintiff is an Arizona Professional Corporation authorized to and conducting business in Maricopa County, State of Arizona.

2) Defendant BottomLineStocks is the agent and/or a front for Defendant GLOBAL ENTERTAINMENT ACQUISITION CORP ("Global") and the Unknown Defendants 1-50

who desire to avoid liability pursuant to the Telephone Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005 ("TCPA"), 47 U.S.C. § 227 *et seq.*

3) Global is a Florida Corporation; Global is not authorized to conduct business in the State of Arizona.

4) Global is a publicly traded company trading on the pink sheets under the ticker symbol PSRZ.

5) UNKNOWN DEFENDANTS are the persons and/or entities who engaged codefendants to illegally promote PSRZ by issuing unsolicited faxes to Plaintiff and the members of the Class and who desire to avoid liability pursuant to the TCPA.

6) On June 10, 2008, Defendants broadcast a fax in violation of the TCPA. Exhibit 1. ("Unsolicited Fax")

7) The Unsolicited Fax contains material omissions of fact, half truths, inaccuracies and otherwise violates 15 U.S.C. §§ 78a-78kk; Section 10(b) of the 1934 Securities Act and Rule 10b-5, 17 C.F.R. § 240.10B-5[1].

8) The purpose for broadcasting the Unsolicited Fax was to manipulate the securities market and, in particular, PSRZ stock.

9) Stock manipulation is a violation of 10b-5[2].

---

[1] Congress passed the 1934 Securities Act, 15 U.S.C. §§ 78a-78kk, to assure the disclosure of full and fair information to the investing public. See H.R. Rep. No. 73-1383, at 1-2 (1934) (describing the legislation's purposes). In relevant part, Section 10(b) of the 1934 Act proscribed the "use or employ[ment], in connection with the purchase or sale of any security, . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). The ensuing Rule 10b-5, 17 C.F.R. § 240.10b-5, emerged in 1943. See *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737 (1975). Like Section 10(b), Rule 10b-5 prohibits "any act . . . which operates or would operate as a fraud or deceit upon any person" and makes it illegal "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b).

[2] In the context of stock price manipulation, the Courts have found an independent duty to disclose. *In Re Initial Public Offering Securities*, 241 F.Supp.2d 281 (S.D.N.Y. 2003), the Court noted that "Failure to disclose that market prices are being artificially depressed operates as a deceit on the market place

10) Defendants' stock manipulation scheme was not disclosed to the investors and the potential investors through a filing of a Disclosure Form 8-K, and particularly section 8, item 8.01 thereof, or through other legitimate means.

11) This Court has personal jurisdiction over Defendants by virtue of the following facts:

    a) Defendants caused at least one Unsolicited Fax to be sent to at least one recipient in the State of Arizona; and

    b) The State of Arizona has interest in providing a forum for its residents, including the Plaintiff and the Class identified herein; and

    c) It would be extremely burdensome for Plaintiff to access another forum; and

    d) Upon information and belief, Defendants continuously and systematically sent unsolicited faxes to the State of Arizona and elsewhere; and

    e) Defendants purposefully availed themselves of economic benefits and resources of the State of Arizona in conducting their business here; and

    f) Defendants may be hailed in court here under the liberal "effects" test in this tort action; and

    g) Defendants did and should have foreseen being hailed to Court in the State of Arizona.

12) The Unsolicited Fax on its face states that the sender was paid "seventy five thousand free trading shares of PSRZ for services rendered". Upon information and belief, at or about the

---

and is an omission of a material fact." citing to *United States v. Charnay*, 537 F.2d 341, 351 (9th Cir.), cert. denied, 429 U.S. 1000, 97 S. Ct. 527, 50 L. Ed. 2d 610 (1976).

time of the transaction, the PSRZ shares were trading at or about 0.035; therefore, the total consideration for the PSRZ shares was $2,625.00.

13) Upon information and belief, the cost of sending each fax to a recipient is between 1.1 and 1.5 cents. This means that Defendants sent out between 175,000 and 238,638 Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory damages the sum of $500 to $1,500 for each Unsolicited Fax, or the total between 87.5 and 358 million dollars.

14) This Court has original jurisdiction over this matter by virtue of the Class Action Fairness Act, 28 U.S.C. § 1332(d) requiring minimum diversity and the amount in controversy exceeding 5 million dollars. Actual diversity exists between Plaintiff and Defendants.

15) The venue is proper in this Court pursuant to 28 U.S.C. §§1391 *et seq.*

## CLASS ACTION ALLEGATIONS

16) This is a proposed class action suit brought on behalf of Plaintiff and on behalf of other persons and entities who received an unsolicited fax advertisement to their telephone facsimile machine by Defendants.

17) Plaintiff claims and alleges that Defendants' use of the telephone facsimile machine, computer, or other device to send an unsolicited facsimile advertisement to a telephone facsimile line violates the TCPA. This cause of action is specifically authorized pursuant to Arizona Revised Statutes § 44-1482(C).

18) Plaintiff brings this action in Plaintiff's individual capacity as well as on behalf of a class of persons and entities similarly situated (the "Class").

19) Plaintiff operates a law business located in Phoenix, Maricopa County, State of Arizona, and receives and has received unsolicited faxes that cause it damages due to the loss of its

paper and toner, the temporary loss of use of its facsimile machine and computer, the potential loss of business, and a violation of its right to privacy.

20) As a direct and proximate result of Defendant's conduct heretofore described, Plaintiff suffered damages due to the loss of paper and toner, the temporary loss of use of its computer, and the potential loss of business while its facsimile machine was in use.

21) This Class Action is brought and may be maintained pursuant to Rule 23, Federal Rules of Civil Procedure.  Plaintiff seeks to represent a Class comprised of:

> All persons who received an unsolicited advertisement though a facsimile transmission from Defendants or for which Defendants are otherwise primarily or secondarily liable at any time during the applicable statute of limitations.

22) Plaintiff and members of the Class were recipients of Unsolicited Facsimiles in violation of the TCPA.

23) This action is properly brought as a class action pursuant to Rule 23, F.R.C.P., for the following reasons:

24) The Unsolicited Fax states on its face that the marketing firm sending out the fax was paid 75,000 shares of PSRZ stock for its service.  As more fully computed above, this means that Defendants transmitted between 175,000 and 238,638 Unsolicited Faxes. Pursuant to the TCPA, Defendants are liable in statutory damages the sum of $500 to $1,500 for each Unsolicited Fax, or the total between 87.5 and 358 million dollars.

a)  The class is so numerous that joinder of all members is impracticable; and

b)  There are questions of law or fact common to the class, to wit:

i)  Whether Defendants violate the TCPA when sending the Unsolicited Faxes; and

ii) Whether Defendants are primarily and/or secondarily liable under the TCPA; and

iii) Whether the facsimiles that are the same or similar to Unsolicited Fax constitute "unsolicited advertisements" under TCPA; and

iv) Whether Plaintiff and the members of the Class are entitled to damages under the TCPA; and

v) Whether Plaintiff and the members of the Class are entitled to treble damages under the TCPA; and

vi) Whether Plaintiff and the members of the Class are entitled to injunctive relief under the TCPA; and

vii)    Whether Plaintiff and the members of the Class are entitled to declaratory relief.

c) The claims or defenses of the representative parties are typical of the claims or defenses of the Class because all members of the Class received the same Unsolicited Fax; and

d) The named Plaintiff will fairly and adequately protect the interests of the class because:

i) Plaintiff seeks no relief that is antagonistic to the other members of the Class; and

ii) Plaintiff has no established business relationship with any Defendant or any potential additional Defendant; and

iii) Plaintiff shall vigorously pursue the claims of the Class; and

iv) Plaintiff has retained counsel with 28 years of experience in litigation matters and competent in representing the interests of the Class; and

v) Plaintiff's counsel has expended significant efforts and is learned in tracking down the sources of Unsolicited Faxes.

e) A Rule 23 Class Action is superior to any other available means for the adjudication of this controversy in the following particulars:

i) This action will cause an orderly and expeditious administration of the Class's claims; and

ii) The economies of time, effort and expense will be fostered; and

iii) Uniformity of decisions will be ensured at the lowest costs and with the least expenditures of judicial resources.

f) Because of the size of the Class, the expense and burden of individual litigation makes it impractical for the individual members of the Class to individually seek redress for the wrongs done to them. Plaintiff believes that the members of the Class, to the extent they are aware of their rights against Defendants, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages warranted and/or the value of individual injunctive relief. Hence, a class action is the only feasible means of recovery for the members of the Class. Furthermore, without a class action, the members of the Class will continue to suffer damages and Defendants will continue to violate federal law, retaining and reaping the proceeds of their wrongful marketing practices.

g) Plaintiff does not anticipate any difficulty in management of this action because the evidence proving Defendants' violations of the TCPA is ascertainable through discovery. The identities of the members of the Class are known to Defendants, and damages can be calculated from Defendants' records. This action poses no unusual difficulties that would impede its management by the Court as a Class action.

**COUNT ONE**
(Violation of the Telephone Consumer Protection Act)
(47 U.S.C. § 227 *et seq*)

25) Plaintiff realleges all allegations heretofore set forth.

26) Defendants or their agents used a telephone facsimile machine, computer, or other device to send unsolicited advertisements to telephone facsimile machines to Plaintiff and the members of the Class.

27) On information and belief, in each instance Defendants transmitted or caused to be transmitted unsolicited faxes to telephone machines themselves, or had a high degree of involvement in the transmission of the unsolicited faxes to telephone facsimile machines. For example:

    a) Defendants knew that the transmitted faxes were advertisements;

    b) Defendants participated in the preparation of their content;

    c) Defendants provided or obtained the fax telephone numbers of Plaintiff and the members of the Class;

    d) Defendants and members of the Class have no established business relationship;

    e) Defendants compensated a third party for transmitting the unsolicited faxes to telephone facsimile machines; and/or

    f) Defendants knew that Plaintiff and the members of the Class had not authorized the faxes' transmission by prior express invitation or permission.

28) As a direct and proximate result of said conduct, Plaintiff and members of the Class have sustained damages.  Under the TCPA, Plaintiff and each member of the Class are entitled to

injunctive and declaratory relief enjoining Defendant's unlawful conduct, as well as incidental statutory damages.

29) As a result of said conduct, Plaintiff and members of the Class suffered property damage, and Defendant has invaded their privacy.

**COUNT TWO**
(Declaratory Judgment)

30) Plaintiff realleges all allegations heretofore set forth.

31) This count is brought pursuant to the Arizona version of the Uniform Declaratory Judgment Act, A.R.S. § 13-1821 *et seq* and the Federal Declaratory Judgment Act 28 U.S.C. § 2201 *et seq.*

32) A justiciable controversy exists between Plaintiff and the members of the Class and Defendants regarding the legality of Defendants' unsolicited fax transmissions.

33) Defendants claim, or may claim, that their conduct in sending unsolicited fax transmissions does not violate the TCPA.

34) Defendants claim, or may claim, that they obtained express invitation or consent to send the faxes to Plaintiff and the members of the Class.

35) Defendants claim, or may claim, that they enjoyed an established business relationship with Plaintiff and the members of the Class.

36) Plaintiff claims that Defendants' practices violate the TCPA.

**COUNT THREE**
(Civil Conspiracy)

37) Plaintiff realleges all allegations heretofore set forth.

38) Defendants agreed among themselves to engage in a course of conduct involving a violation of 47 U.S.C. § 227.

39) Defendants agreed to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages to Plaintiff and the members of the Class.

40) Plaintiff and the members of the Class have been damaged by acts committed by Defendants pursuant to the civil conspiracy described above.

41) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of the Plaintiff and the members of the Class, entitling Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

## COUNT FOUR
(Aiding and Abetting)

42) Plaintiff realleges all allegations heretofore set forth.

43) Defendants aided and abetted one another as follows:

a) The sender of the Unsolicited Faxes committed a violation of the TCPA; and

b) Defendants knew that the sender of the Unsolicited Faxes violated the TCPA; and

c) The Defendants substantially assisted or encouraged the sender of the Unsolicited Faxes in the following non-exclusive actions:

i) They provided the information contained in the Unsolicited Fax; and

ii) The information in the Unsolicited Fax was false; and

iii) They provided the opportunity to the sender of the Unsolicited Faxes to violate the TCPA; and

iv) They sought the benefits of the Unsolicited Faxes; and

v) They failed to advise the securities holders and potential securities holders of Global's securities that the securities are being manipulated in violation of law; and

vi) They accepted the benefits of the Unsolicited Fax.

44) Plaintiff and the Class have been harmed by Defendants' aiding and abetting.

45) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of the Plaintiff and the members of the Class, entitling Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

46) Defendants are responsible to Plaintiff and the Class as aiders and abettors for the same amount of damages as the principal violators of the TCPA.

**REQUEST FOR TRIAL BY JURY**

47) Plaintiff requests a trial by a jury on all issues triable by a jury.

**RELIEF SOUGHT**

Plaintiff prays for relief as follows:

a) For Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; and

b) For extraordinary, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to send unsolicited faxes; and

c) For judgment in the amount of $500.00 for each member of the Class for incidental statutory damages for each individual unsolicited fax received from Defendants; and

d) For judgment in the amount equal to three times the damages to Plaintiff and each member of the Class under the TCPA, to wit, $1,500.00 for each member of the Class; and

e) For a declaration that Defendants have violated the TCPA because they failed to obtain express invitation or consent to send the subject facsimiles to Plaintiff or the Class; and

f) For a declaration that Defendants violated the TCPA because they did not enjoy an established business relationship with Plaintiff or the members of the Class; and

g) For punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

h) For judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provide by law; and

i) For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 18th day of July, 2008.

PETER STROJNIK

_____

Peter Strojnik
Attorney for the Plaintiff

# Global Entertainment (PSRZ) Capturing Share of $36.95 Billion Industry

## Independent Film Production Company has track record of success and pipeline of films in production

**Market Highlights:**

- Worldwide box office reached **another all-time high in 2007 with $26.7 billion,** a 4.9% increase from 2006 (Source: Motion Picture Association of America)

- In 2006, there were sales of 184.5 million rental DVDs (up from 178.4 million in 2005) and 1,140.2 million sell-through DVDs units (Source: IBISWorld)

- The domestic box office continued to grow in 2007, **reaching $9.63 billion after a 5.4% gain** (Source: Motion Picture Association of America)

- Latent demand in the U.S. for Motion Picture Production, Distribution, and Theaters in 2007 is **estimated at $109.97 Billion** (Source: Icon Group International)

- Movie and Video Production in the U.S. generated **$35.43 Billion in 2007,** up $1.49 Billion, or 4.4%, from 2006, and up $3.46 Billion, or 10.86%, from 2006 (Source: IBISWorld)

**Global Entertainment Acquisition Corporation** is an emerging film production company headed by Maurice Smith, a veteran filmmaker who has produced many successful and memorable films over his distinguished 30-year career. His films have been distributed in virtually every country in the world and he has distribution on several films currently with some of the largest film distributors in the world.

---

**Global Entertainment** has produced films with some of the most respected and recognized names in film, including:

➢ Dennis Hopper (Easy Rider, Speed, Apocalypse Now)
➢ Michael Madsen (Reservoir Dogs, Kill Bill)
➢ Billy Zane (Titanic, Tombstone)
➢ and Many More!

---

**Changing Face of the Industry:**

- From 2001 to 2007, the percentage of total films release in the U.S. by "independent" studios has increased from 59% to 70% (Source: Motion Picture Association of America).

- The average cost to make and market a major MPAA member company film was $106.6 million in 2007. This includes $70.8 million in negative costs and $35.9 million in marketing costs. (Source: Motion Picture Association of America)

## Now is your chance to be in pictures –Grab PSRZ before this emerging independent film production company really takes off!

DISCLAIMER: BottomLine Stocks (BTS) is an independent marketing firm. This report contains forward-looking statements. Past performance does not guarantee future results. This report is based on the BTS independent analyses, and may, or may not be the opinion of BTS. This report is based on PSRZ's web site, press releases, and also relies on information supplied by sources believed to be reliable. The information contained in this report is for information purposes only, and should not be construed as an offer or solicitation to buy or sell securities. Investors should consult with an investment professional before investing any money. BTS was compensated seventy five thousand free trading shares of PSRZ for services rendered.

**Exhibit 1**